On behalf of Sonia Perretto and I'm here today asking the court to find that the district court erred in dismissing Ms. Perretto's third amended complaint under 12b1, that the district court erred in denying leave to amend the complaint under the district court's rule 6, and that the district court erred in finding a lack of jurisdiction under 28 U.S.C. 1334 and erred in denying the motion to recuse. I wanted to take up the leave to amend first because I think the procedural issues could be, um, could moot some of the other issues. With respect to the leave to amend, the court has a rule 6 which requires any party filing a motion to dismiss to confer with the opposing party and send a letter and then also have a certificate of conference within the motion to dismiss. In this case, there was no certificate of conference. There was no conference regarding the motion to dismiss. Then the rule goes on to state that if the movement does not follow this rule before filing a motion to amend. Relying on the rule, Ms. Perretto requested that she receive leave to appeal in responding to the motions to dismiss, citing to rule 6, and that was not granted. Ms. Perretto did file a motion for a new trial, and that was also summarily denied without any reasoning or basis. When we go to dismissing an appeal, we've cited two cases. What I should, I should step back. The court's order, um, the court's opinion on appeal was the first time any court had taken a substantive position on the claims that had been asserted by Ms. Perretto. Even if there had been prior action in the bankruptcy court before it was transferred to the district court, there had been no substantive rulings because the defendants, the city and the park board, had requested a jury trial and abstention of the bankruptcy court. Even if there was a jury trial requested, the bankruptcy court transferred it to the district court. That third amended complaint had been filed while pending before the bankruptcy court in November of 2021, and this is, um, I think will become relevant for some of the other issues later, but I wanted to raise at this point. Ms. Perretto's case is relatively similar to another case that the court has held in Devalier versus, pronunciation . . . Biller. French, and I'm not going to get it right, but the Devalier case against the State of Texas. That is currently pending before the Supreme Court. Oral arguments were on January 16th, 2024. It has not been ruled on, but stepping back, if we look at the history of that case, the history of that case was pending at the same time as Ms. Perretto's case in the bankruptcy in 2021. The magistrate in the Galveston Division entered a pretty robust opinion taking positions that Ms. Perretto took in this case. The district judge went ahead and approved . . . I'm going to say that there are some issues that I'm concerned about. Number one is, although you sued, you purported to sue the General Land Office, your actual Third Amendment complaint barely makes reference to them. So how do we . . . and which is something Judge Brown pointed out. So how are we to know that the General Land Office is some kind of co-defendant here? I cited in the appellant brief, as well as in the reply brief, to the specific allegations that were in the complaint. And that's on page 24 and 25 of the opening brief. And then also is 10-19. But the pinpoint site I don't have. But in the reply brief, we also went through the other documents in the record where we show that the GLO was the partner of the park board on the project. How much is this court supposed to do? Were all those documents . . . you say they are in the record. How did they get into the record? Did you attach them to your complaint? Certain records were attached to the complaint, but not those GLO records. Those were attached to the TRO. However, the general allegations in the complaint cover the issues. And when a complaint is taken in favor of the pleader, it references the GLO specifically at several points and stated that the GLO funded the excavations. The GLO was aware and involved in the excavation. The defendants made . . . the GLO made false allegations. They went forward with a construction project with full knowledge, knowing it would cause flooding of the properties. I mean, I think those are enough notice to get past a motion to dismiss. Now, a motion for summary judgment may be different. However, in the reply brief, I then went through the attachments to the motion for TRO, which had specific documents showing that the GLO was a partner with the Park Board. While they never acknowledged that, it's in the documents we were able to get from public record requests, not from the parties. Well, as you know, just taking . . . I haven't looked at those records, but people call other people partners all the time. It's a very vague term at this point in our existence, and I'm very reluctant to take something like that that you have to pull out in a reply brief, which we probably shouldn't be considering anyway. I don't see how the district court was supposed to look at a reply brief for the temporary injunction, which it had ruled on months before. Understood, Your Honor, but I think the allegations in the original complaint, which was filed in 2021, where the court then ruled in December of 2022, and records weren't available at the time the complaint was filed, but the fact is that those allegations, the broad allegation that they acted on a construction project with the knowledge that it would cause flooding of the neighboring properties . . . Okay. I'm sorry to interrupt, but I don't want to . . . No worries. . . . a lot of issues here, because even if DeVillier has the allegations here have some substance to come within what the Supreme Court is considering in DeVillier, what do we do about . . . I mean, that doesn't cover the Galveston Park Board of Trustees or the City of Galveston, because there's plenty of law that makes them potentially amenable under 1983, right? Yes, Your Honor. So one has to . . . you have to prove that part of your case or that is totally independent of DeVillier, and then the other point is, are you still claiming jurisdiction under the bankruptcy law related to . . . Yes, Your Honor. . . . related to as well as 1334? So abandonment has nothing to do with related to or 1334 jurisdiction? No. Abandonment does have something to do with 1334. What's your best case for saying that the federal court retains jurisdiction under any of your bankruptcy theories after property is abandoned by the trustee? Your Honor, there's several cases to that point. In re Laffoon, in re Sills, in re Bennett, in re Fong. Are those cited in your . . . Yes, Your Honor. And what do those . . . give me an example. An example is one where there's a tax lien that they go back to the bankruptcy court to get the property that had been abandoned. That's during the pendency of the case? No, there's one . . . one of the cases specifically . . . Abandonment means property is no longer in the bankruptcy estate. Right. These are all cases with abandonment that I've cited to you. And are those . . . from what courts do those . . . were those cited in your brief? Yes, they're cited in the brief. Okay. From Henry Gunter as well as . . . And is there any Fifth Circuit case on that? No, it's a case . . . as I understand it, it's a case of first impression for the Fifth Circuit. All right. Are there any other circuit court cases? Is there anything in Collier's about that? The DOJ manual says that the jurisdiction survives, but no, I was not . . . there's other than the cite to these cases, I have not seen any treatises that have cited to a circuit case or a Supreme Court case on the issue. So you're just citing bankruptcy courts? And . . . yes. Yes, Your Honor. In district court. In Ray Bennett is a district court case. Okay. And that's out of the Western District of Michigan and that was avoiding a lien after abandonment. In one case, the main case had actually been closed and the adversary had been filed before the bankruptcy case was closed and it still found that there was jurisdiction under 1334E. Well, I'm not sure what I'd say about that as related to this case where there was an abandonment. So . . . Yeah, all of those cases were abandonment. Sorry. Okay. The other point is, how far back in time do you claim to be suing for damages? The damages we have asserted under inverse condemnation would go back . . . I'm sorry, let me step back. It would be either a ten-year or six-year period. Ten-year would be if it was . . . Well, that goes well back into . . . except for the short, relatively short period. And I'm not saying I'm not sympathetic to your client, but this is interesting from a bankruptcy standpoint. Your client had Chapter 11 going for about a year and a half and then converted to Chapter 7 where the case was languished, apparently, for about eight or nine years. But during that period, the trustee was in charge of Pareto Beach, right? Yes, Your Honor. Plus he . . . So why does this cause of action accrue to your client for the period up until 2020, I believe it was, when the abandonment occurred? I will agree that there's some novel issues in this case because I don't think I've ever seen this before where you've had a 12-year bankruptcy and prime real estate gets abandoned. But what I would say to that question is, as long as the statute of limitations hasn't run, and all of her claims are only from the petition date forward, as long as the statute of limitations hasn't run, it would inure to the property. And that would be Ms. Pareto. And that abandonment would allow for her to pursue those claims. So even though you admit that . . . so the trustees . . . I don't understand because while the trustee is in charge of the property, he has to manage it for the benefit of creditors. So if somebody is flooding the property or disrupting access to the property, that ought to accrue to the creditors. It seems to me that falls under the classic deal. Did you ever . . . where the bankrupt doesn't talk about a, what do you call it, a tort cause claim when he files bankruptcy. He hides it and then he goes off and tries to pursue it separately. All the courts say that's wrong. How does your claim differ from that? This claim is exceptionally different from that because the debtor was forever trying to assert the issues and raise concerns. She was . . . Why didn't you sue the trustee? I'm sorry? Why didn't you sue the trustee? Your Honor, I got involved in June 2021. So I was . . . the trustee abandoned the property. The bankruptcy court could always vacate that order. So there's risk and advantages to pursuing, firing your gun at all parties at all times. The trustee did not file for any fees for his law firm, which was engaged in the case. Ms. Pareto will be bound, I believe, by any settlements that the trustee had with the park court and the city to the extent that he agreed not to pursue certain issues. But that was not all issues. And they agreed to settlements in the bankruptcy that they then breached. And everything in the current state of the property is interrelated with the things that happened in the bankruptcy. And the debtor had no power, she tried with pro se motions, but the debtor had no power to preserve those rights other than to make sure all creditors were aware of them. Well, it seems to me like somebody could have sued the trustee, but I guess that doesn't really matter at this point. Well, and until the final ruling of the, I mean, going after the trustee before you have a final judgment from the state court, I think would have been a precarious position and not very good business judgment. Well, that came about in 2015. Yes, Your Honor. So it would be just 2015 forward. The trustee thought and had filed motions to sell and intended to liquidate the property. And for whatever reason, that did not come to full. Any other questions? Well, no. With respect to the 1983 issues you raised, the court found that by failing to cite to 1983, it was an incurable defect and it would be futile to allow any type of amendment. However, Supreme Court case, City of Shelby says that that's not required. And even in the lower, the magistrate's opinion in Devalier, it also addressed those issues and found it wasn't required. Are we supposed to not only disregard the deliberate pleadings by plaintiffs, but then to make up, you know, invent ourselves the basis for the claim that's pled? Your Honor, I see my time is out. May I continue? Well, no. Please say, I mean, the basis for jurisdiction. Yes. So the basis for jurisdiction was cited to in the complaint, the Nick case as well as the Cedar Point case are specifically cited in the complaint, which is, enwraps what those cases say and those refer to 1983. I think we've heard that the Nick case cites to 1983, 19 times. I may have the number wrong, but that, those cases were actually cited to in conjunction with the other authorities for jurisdiction. Thank you. Again. Okay. No, no. You have a chance for rebuttal. We'll hear from Mr. Abrams. May it please the court and good morning. My name is Barry Abrams. It's my privilege to be here on behalf of the City of Galveston and a separate governmental entity, the Galveston Park Board of Trustees. Unless the court disagrees, we're going to rely upon our briefing with respect to the amendment, the bankruptcy jurisdiction and the recusal grounds, and I'd like to focus my comments on the discussion of the claim of 1331 jurisdiction. I think it's helpful to appreciate the procedural path this took. As my friend indicated, the case began in bankruptcy court and for reasons that are not apparent to me, persistently the plaintiff has attempted to invoke bankruptcy court jurisdiction rather than 1331 jurisdiction. The 1331 jurisdiction, when you read her pleading, is contained in a string site after the paragraph that actually in her reply to the motions to dismiss and what appears to be a sort of jurisdictional afterthought, the argument is made that under the Nick case, which involves the issue of the substantive existence of a right under the Fifth Amendment, she pled jurisdiction. And so when the city and the park board came back after having skirmished on the bankruptcy jurisdiction issue, which we brought to Judge Brown's attention that while we think there are substantive defects which rise to the level of a jurisdictional defect, we appreciate the case law and if the court were to get into the merits for wrestling with that, we alternatively ask the court to consider a 12B6 dismissal with respect to the purported constitutional and takings claims. I'm sorry, I misunderstood what you just said. Were you saying you want us to do that or you told that to Judge Brown? We asked Judge Brown in the alternative. We had a 12B1 and a 12B6 motion pending. When Ms. Pareto came back in her reply to the motion to dismiss and proclaimed that there was this 1331 basis for retaining the case, we first made the argument that given the absence of a cause of action against a local government except through 1983, which she had not substantively pled, given the absence of that, the court had a jurisdictional basis for dismissal. Can you help me understand that? I've seen this before. I'm aware of your writing in Abbott. Yes. So help me, help me, because the Supreme Court of the United States has said, in Steele Co. and in many other cases, that there is a really important distinction between the absence of a cause of action and the absence of jurisdiction. Now, there are circumstances where the claims are so frivolous, right, that the two things can kind of, you know, in Delveyhood can kind of merge together. But I never take that to be your contention. So how in the world, even if you're right about everything, would it be a 12B1 jurisdictional problem? Let me tell you, we have a two-part argument. And the first point is to address the Steele point. And Steele talks about when there is no substantive plausibility to a claim. And when the court talks about what is insubstantial substantively, it talks about it being implausible because it is foreclosed by prior decisions. Our position is, with regard to the Steele point, that the allegation of a direct constitutional cause of action is foreclosed by this Court's prior decisions and the decisions of virtually every other court. When we did our briefing, I did not focus on the distinction between Fifth Circuit authority finding no ability to bring a direct cause of action other than under 19E3 outside of the takings context. But the court has addressed that. And I want to hear this. It's really important. And I'm sorry to interrupt. No, no, no. Please. I'm just — you're down the highway, and I'm still on the entrance ramp. I don't understand how one can look at a complaint — I mean, I was in private practice for a while. I used to do this all the time, file a motion to dismiss. And I'm looking at the complaint, and I say, oh, I think this plaintiff does not have a cause of action. What I would do is file Rule 12B6 and say, Judge, dismiss this with prejudice on the merits, right? Stilco says that is a with prejudice dismissal on the merits, res judicata for all future claims, versus, no, Judge, this is a 12B1 problem. There's no jurisdiction here. Dismiss without prejudice, that is, do not exercise the judicial power of the United States. Don't reach it. Never the tween shall meet, with small exceptions not relevant here. Help me understand. Let me recap. I'm sorry. Sure. Please. Let me recap procedurally. We started down the 12B1 path. We did bring a 12B1 and 12B6. We started down the 12B1 path given the emphasis of the bankruptcy jurisdiction. When, in the reply, 1331 surfaced, we expressly re-invoked our 12B6 ability and brought to the Court's attention that we appreciated that if the jurisdictional issue was intertwined with the notion of the merits of the cause of action, we were invoking 12B6. Now, when Judge Brown wrote his opinion, he acknowledged the case law, which is that the exclusive vehicle procedurally against a local government to assert a constitutional claim is 1983, and he found that, and he was correct. He did find that in the context of what purports to be a 12B1 dismissal. He got it right, but he didn't acknowledge the pending 12B6 motion that the city and the park board had. But what was the nature of his judgment? What was the judgment he ended up with? It is silent. It is a dismissal, and because it is silent, under Rule 41, it's without prejudice. And so we certainly had the ability, hypothetically, to cross-appeal in this case. So let me ask it this way. Are you familiar with a circumstance where one could grant a 12B6 motion without prejudice? That should not be the decretal finding. How could one do such a thing? I mean, Steel Co. says this. A 12B6 dismissal is by its definition, right, without any future or, you know, there's just no — there's nothing to debate. It's like that is a with prejudice on the merits dismissal. And in preparation for argument, I stumbled across this Court's decision in March, which it appears to me the Court took liberty in a prisoner context, prisoner suit context, to say that in that context, very narrow, the Court could convert a dismissal without prejudice to a dismissal with prejudice. I've not found, and because I found Judge Garwood's dissent so compelling, I've not looked very hard for other precedents suggesting that you could convert the nature of dismissal. And I'm not here inviting you to do that because I don't think I'm entitled to relief broader than what I got in the trial court for my clients. And this would certainly be broader. I don't mean to hang you up on this, but the Marks case you referenced, did you say you found that in prep, so it's not in the briefs? It is not in the briefs. Okay. So that — no harm. I'm not trying to criticize you. I stumbled across that when I was dealing with the fact that it's so painfully apparent to me that my clients are, at a minimum, entitled to a 12B6 dismissal on the merits of the 1983 claims, even though Judge Brown packaged it in his jurisdictional analysis. Well, since you've read Marks and I haven't — I'm sorry? You've read Marks and I haven't. Obviously, it's not in the briefs. Marks was a prisoner claim. And when you say that, you mean 1915 PLRA? It's Marks v. Hines, 117 F. 3rd, 1504. The court, en banc, found that in the prisoner context, under certain circumstances, it was appropriate for the court, for a variety of practical reasons, to convert a dismissal without prejudice to a dismissal with prejudice. And what I'm asking is, is the variety of factual circumstances that you're referring to, is that because it is 1915 in the PLRA? Yes. Okay. So that makes — That's the way I read the opinion, is that it was a practical resolution of those kinds of cases. Right. But you obviously don't get that in this circumstance. No, no, no. I'm not at all suggesting it applies here. And that's why I said, when I read Judge Garwood's dissent, from that narrow exception, he persuaded me, and I've not found the court varying from that. So I'm not here asking you to convert the proper dismissal from — without prejudice to prejudice. I am here asking you to affirm the dismissal on the alternative ground, that it should be dismissed, because the argument is not the failure of Ms. Pareto to use the verbiage 1983. The failure is the failure to have pled facts which support all of the requisite elements of a 1983 claim, which she did fail to do. Do you have any dispute with your friend on the other side that this case arises under federal law? I think it's a naughty question. It's the nexus that you addressed in Abbott between substantive merits and jurisdiction. And courts have struggled with that. So can one bring a takings claim? Obviously. Can one bring a takings claim and allege a Fifth Amendment violation? Obviously. Did it happen here? In our view, it did not, because the exclusive procedural path is through 1983, which the plaintiff did not plead. So she did not plead a federal claim that is cognizable. I see my time is up. Unless there are questions, thank you. No, sir. Thank you. Ms. Hobson. May it please the court. Katie Hobson on behalf of the Texas General Land Office. I'd like to focus on two topics. Pareto's lack of standing at the land office. Thank you. How's this? I'd like to focus first on standing. Pareto's lack of standing to sue the land office. And then second, on the lack of bankruptcy jurisdiction in this case. So starting with standing, this is a threshold issue that Ms. Pareto has not overcome. And Judge Jones, you're right. There are very few allegations that implicate the land office at all. She has not traced her injuries to actions that the land office has taken. And she must do this to establish standing to sue the state. This is the reason why Judge Brown granted the land office's motion to dismiss and why we urge you to affirm. The factual allegations generally fall into two categories, sand scraping and the flooding claim. Sand scraping is allegations that the park board, because of sand scraping activities undertaken by the park board, that has injured Pareto because it has removed sand from her property and caused false erosion data to be taken by a third party. There are no allegations that the land office scraped sand. The land office is charged at most with knowing or being aware of sand scraping and that by itself is not an action. So her injuries of sand removal and erosion data tampering cannot be traced to the land office under these facts. Turning next to flooding, the act that's alleged to have caused the flooding is the Stewart Beach drainage project. And Pareto does not allege that the land office constructed this project. That should really be the end of the inquiry right there. I do want to address the comments that we heard in my colleague's direct about the alleged partnership between the land office and the park board. The land office is charged in reply, the allegation is that because the land office administers a grant program that it had some amount of control over the Stewart Beach drainage project. That allegation is not before the court, of course, because it's not in the complaint. But even if it was, that's not enough to establish traceability to the land office for a few reasons. First, as of January 6, 2022, the park board had not conducted any reimbursable construction activities within the scope of the submitted as part of the TRO in Record on Appeal 1968, Exhibit 1. The court, of course, denied that TRO. Second, the Stewart Beach project is a park board project. The park board is the entity doing the construction. Local government is the entity with the power to permit beachfront construction projects in general. So the fact that the park board ultimately got a grant from the land office to do this project does not create that causal link. Because the park board can actually apply for and did apply for funding from any number of sources. And the Lujan case says that injury cannot be the result of an independent action of another party. That's what's happened here. The Stewart Beach project is the independent action of the park board. And I want to contrast this with the situation in DeVilliers, since we've talked about that case a bit. The flooding in DeVilliers was allegedly caused by a barrier constructed by the Texas Department of Transportation. So there is no question of traceability to the state in DeVilliers. We're in a completely different situation here. If the park board comes to the GLO and says we need a million dollars because we need to dig up this lady's beach, I assume you would agree that's traceable to GLO? That's not a trick question. I'm not sure that that's right. Really? Just the request, just the application for grant funds. Sure. And the grant application says, hey, like the reason we need a million dollars is because she has a lot of sand and we've got to get a lot of trucks and we're going to come and dig it up. I see. Okay. Yeah. So that would be if it's from those facts, if it's foreseeable that that flooding will ensue or that taking sand is the purpose of the project, I suppose. I don't think there are any grant funds available for sand stealing, but in theory that I think you're right under those facts. Well, yeah, I didn't mean it to be a trick question, but to be clear, I wasn't actually giving you the part about the flooding. I was just saying, hey, we, the park board are in the business of digging up Ms. Pareto's sand and we need a million dollars to help us do it. That seems traceable to GLO because the difference between paying for the trucks versus operating the trucks is the kind of thing that Article 3 doesn't care about, I would think. Perhaps that's right. I think the traceability issue does have to be that it's actually traceable to the act of the park. So I think just administering a grant program is by itself not enough. I was not able to find any cases where just administering a grant program was enough to create the kind of traceability to a flooding injury that you'd need. Is there anything in the record that supports active involvement by the GLO? There are citations. I think the citations in Ms. Pareto's reply involve materials that were submitted to the land office pursuant to the requirements of the grant program. You have to show that you are actually conducting a project that complies with the grant program requirements, but those are not documents that show that the land office controls the project or permits the project. The project can continue with or without the land office involved. You just need funding from some source. Are you aware of any cases where funding alone of grants created or led to 1983 co-liability? I'm not aware of any cases like that. Ms. Pareto has not cited any. The traceability problem by itself is fatal to Pareto's case as to the land office, and the court should affirm on these grounds. I also want to talk about bankruptcy jurisdiction briefly. There is no bankruptcy jurisdiction in the case. Because the property has been abandoned, the case has been fully administered, and the case has been closed. The precedent from this circuit is the Kane v. National Union Fire Insurance case, which we cite. Once abandoned, property reverts back to the debtor as though no bankruptcy case was filed. As though what? As though no bankruptcy case was filed. What's your site? National what? That's Kane v. National from 2008. Once that happens, once property reverts back to the debtor, section 1334E no longer gives a bankruptcy court exclusive jurisdiction over that property. Once 1334E no longer applies, then jurisdiction is limited to this related to arising under bankruptcy jurisdiction under 1334B. But that section only applies where the outcome of the bankruptcy jurisdiction is the debtor. Here, because the bankruptcy estate has been fully administered, because the case has been closed, and because the property has been abandoned, any hypothetical recovery in this case can only benefit the person, Ms. Pareto. It cannot benefit the bankruptcy estate. Ms. Pareto's read of the 1334E jurisdiction would mean that bankruptcy courts have jurisdiction over property in perpetuity if they were ever part of a bankruptcy estate, and that's a vast expansion of bankruptcy courts' jurisdiction. There are courts of limited jurisdiction for a reason. That would be a radical change. There is no bankruptcy jurisdiction under these, in this situation. Even if the case was reopened for some reason, because the property has been abandoned, it cannot benefit the creditors. National Union Fire is not cited in your brief. Cain is the first word of that. I believe it is cited in our brief. But I'll confirm. It is certainly cited in the motion to dismiss and in the briefing before the district court. If the court has no further questions, I will end there. Thank you very much. What is the basic reason for affirming the 12B1 dismissal? The most straightforward path is to affirm dismissal because there is no traceability to the actions that the GLO took. The complaint... So you're willing to rely on the complaint and the documents in the temporary injunction? The complaint is really the document that the court needs to look at to determine if standing has been pled. But I bring those other documents up because they're cited in the reply for the first time, and so we were not able to respond to that. But really, it's the complaint that the court needs to look at. Okay. Okay, thank you. Thank you. Okay, Ms. Brown. Thank you, Your Honor. Much of what was just discussed is not in the record, that they only are involved with funding or that they don't have active involvement. It's actually contrary to what's in the record, which shows active involvement by the GLO in the decision making as well as in the management of the project. And this all gets back to the fact that it's required for them to be involved in order to comply with federal law of consistency. And then the state adopts the Open Beaches Act in order to comply with the federal consistency standards. And then the Open Beaches Act compels the cities and municipalities and park board to enter into plans that also follow consistency. This all tracks up to federal consistency rules, and that is why the GLO has to be actively involved. That's why the GLO has to approve a project. The project could not go forward. Is it your position that anytime there's federal funding or state funding behind any projects like this, that the state is potentially liable if somebody raises a takings claim? No, Your Honor, because in most projects like this, the state does not work with the park board. In fact, they handle it as a buzzword. Pardon? Partner is a buzzword. It is, and it's on a sign, which is in my appellant brief. It's on a sign on the property showing we're partners. They don't do that for every project. They only did it on that project that I'm aware of. And so they're actually highlighting the fact that they're partners on the project. And they have it in their letters. I mean, 46, page 14 to 15, and I also discussed the federal consistency guidelines at that point as well. This is a very unusual, it's an extraordinary case for me. Even on the bankruptcy side, which I'm more familiar with and more comfortable with, the 1334E issue does not come up often. You do not normally have high-value property that gets abandoned later. If we look to just the clear text of 1334E, there's no carve-out when there's an abandonment of the property. To the extent that the debtor owned the property as of the commencement of the case, the court has jurisdiction. And I'm sure the court is well aware that bankruptcy cases can be opened 100 years after they're closed, and that has happened before. So with respect to the fact that the bankruptcy court may have jurisdiction that lasts impurity, yeah, that's how the code's written. And I think the drafters did it with a mind to leave it open so that parties like Ms. Perretta would have some sort of recourse when there's an intersection of bankruptcy issues and the property issues. Did you see this King v. National Fire that Ms. Hobson just cited? I apologize, Your Honor. I don't have ready recollection. Well, I know because it's not in her brief, so maybe you didn't prepare for that. But is it in your brief? I didn't see it in the table. King. King. All right. Well, then we look it up again. My recollection was none of their cases dealt with a debtor who was then pursuing a 1334E. It was always other parties. The 1334E deals with a debtor and a property of the debtor, and that is a big distinction than just any interested party coming back in and opening the bankruptcy. So even though the debtor gets an abandonment of his home in the bankruptcy court, he can come back into the shelter of the bankruptcy court to pursue claims? Yes, and that ... That's ridiculous. I'm sorry. I mean, okay, the case she cited ... It has to be K-A-N-E-535-F-3-3-80. So ... In other words, the whole point of trying to get the thing abandoned is so it can be yours again. In most cases, and in most cases, there won't be a need for any 1334E jurisdiction, but what I'd note is property is not defined in the bankruptcy code. Property of the estate falls under 541. Property itself is not defined. I'm not going to cite the cases that I haven't cited to, but I just saw recently, minutes ago, a case where just the plain language has been taken and using Black Law Dictionary definitions to determine what, quote, property is. So if you look at 1334E, it's very interesting because it refers to property of the debtor and property of the estate. There's no definition for property, and then there are cases that say that it has to be in REM, and even if that is the case, substantial claims that have been raised by Ms. Pareto are in REM, and I've cited to the cases saying that condemnation and takings cases are in REM cases. So with that, I see that my time is up, Your Honor, and I appreciate your time today. Okay. Thank you very much. It's a very interesting case. Court will stand in recess until 9 o'clock tomorrow morning.